BUFFALO NEWSPRESS INC.,

                Plaintiff,

v.

ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

                Defendant.

**DECISION AND ORDER**
1:19-CV-00067-WMS-MJR

## INTRODUCTION

This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable William M. Skretny for all pretrial matters and to hear and report upon dispositive motions. (Dkt. Nos. 5, 18) Before the Court is defendant's motion for transfer of venue to the District of Rhode Island. (Dkt. No. 17) For the following reasons, defendant's motion for transfer of venue is denied.

## JURISDICTION

Section 636 of Title 28 of the United States Code provides a list of dispositive pretrial matters which may be referred to a magistrate judge for purposes of issuing a report and recommendation for consideration by the District Court. *See* 28 U.S.C. § 636(b)(1) (authorizing magistrate judges, upon designation, to "hear and determine any pretrial matter pending before the court"). While motions for changes of venue are not listed among the types of relief in Section 636(b) that are expressly dispositive, most recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive and are therefore "within the pretrial reference

authority of magistrate judges." *Skolnick v. Wainer*, No. 2013-CV-4694, 2013 WL 5329112 (E.D.N.Y. Sept. 20, 2013). *See, e.g., Alessandra v. Colvin*, No. 12-CV-397, 2013 WL 4046295, *4 (W.D.N.Y. Aug. 8, 2013) ("A motion for change of venue is a non-dispositive pretrial matter which this Court may decide pursuant to [Section 636(b)(1)(A)] by Order."); *D'Amato v. ECHL, Inc.*, No. 13-CV-646, 2015 WL 2151825, *3 (W.D.N.Y. May 7, 2015) (explaining that the "Court will adhere to its more recent practice and consider the motion to change venue as non-dispositive [because it] does not end federal jurisdiction"); *United States ex rel. Fisher v. Bank of America*, 204 F. Supp. 3d 618, 629 (S.D.N.Y. 2016) ("Because a motion to transfer venue is non-dispositive, this Court [will] adjudicate it by order pursuant to 28 U.S.C. § 636(b)(1)(A)."); *Kasparov v. Ambit Tex., LLC*, No. 12-CV-3488, 2016 WL 10749156, at *5 n.4 (E.D.N.Y. Mar. 10, 2016) ("The majority view within this circuit is that a magistrate judge has the authority to grant the non-dispositive relief sought in a motion to transfer venue."); *Salgado v. NYS Dep't of Corrections and Community Supervision*, No. 13-CV-01108, 2018 WL 1663255, at *2 (W.D.N.Y. Apr. 6, 2018) ("[m]ajority of recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive") (collecting cases). Thus, pursuant to Section 636(b)(1)(A) and in accordance with recent precedent, the Court denies defendant's motion for transfer of venue in the form of a decision and order.

## RELEVANT FACTS AND BACKGROUND

Plaintiff Buffalo Newspress Inc. (hereinafter "Buffalo Newspress" or "plaintiff") commenced this action in Erie County Supreme Court on November 29, 2018 against defendant Adlife Marketing & Communications Co. Inc. (hereinafter "Adlife" or

"defendant"). (Dkt. No. 1) The complaint alleges that Buffalo Newspress is a corporation organized under the laws of the state of New York with an office and place of business located at 200 Broadway, Buffalo, New York, and that Adlife is a foreign corporation with offices located at 38 Church Street, Pawtucket, Rhode Island. (*Id.*) It is alleged that Buffalo Newspress provided goods and services to Adlife from in or about March 2016 through November 2018, as reflected on invoices, and that Adlife agreed to pay for those goods and services. (*Id.*) Buffalo Newspress alleges that Adlife has defaulted in the payment for the goods and services in the total sum of $1,684,437.40, together with interest. (*Id.*) Buffalo Newspress asserts claims for breach of contract, account stated (based on the invoices allegedly received by Adlife but not objected to), unjust enrichment, and *quantum meruit*. (*Id.*) Adlife timely removed the lawsuit to this Court on January 11, 2019, based on diversity jurisdiction pursuant to Section 1332(a) of Title 28 of the United States Code. (*Id.*)

On January 18, 2019, Adlife filed an answer to the complaint which included counterclaims against Buffalo Newspress. (Dkt. No. 2) The answer states that Buffalo Newspress is a printing company that specializes in retail advertising through print circulars in weekly newspapers. (*Id.* at ¶¶ 33-34) Adlife works with grocery stores to design and print circular advertisements for placement in local newspapers. (*Id.* at ¶ 35) Adlife includes photographs of food products in designing the circulars and is the copyright owner of thousands of photographs depicting various food products. (*Id.* at ¶¶ 39-40) Adlife indicates that it licenses the copyrighted photographs when permitting them to be used in a particular circular. (*Id.* at ¶ 41) From 2008 through 2018, Buffalo Newspress printed hard copies of Adlife's store circulars. (*Id.* at ¶ 36) Adlife alleges that

its customers never had direct contact with Buffalo Newspress. (*Id.* at ¶ 38) Adlife further alleges that over the past several years, Buffalo Newspress negotiated to purchase printing business directly from Adlife. (*Id.* at ¶ 44) In the summer of 2018, Buffalo Newpress ceased these negotiations and commenced this lawsuit shortly thereafter. (*Id.* at ¶¶ 45-46) Adlife alleges that Buffalo Newspress misrepresented its interests in purchasing business from Adlife, and instead used the negotiations to gain information for the purpose of taking business and customers from Adlife. (*Id.* at ¶¶ 47-49) In November of 2018, Buffalo Newspress sent a letter informing Adlife that it would stop all printing services for Adlife on December 28, 2018. (*Id.* at ¶¶ 50, 54) Adlife alleges that Buffalo Newspress than began directly contacting Adlife's clients to inform them that Adlife was indebted to Buffalo Newspress, and that Buffalo Newspress would be taking over their accounts. (*Id.*) Adlife alleges that Buffalo Newspress has retained several of Adlife's clients, resulting in a $10,000 loss of commissions for Adlife. (*Id.* at ¶ 59)

Adlife's counterclaims against Buffalo Newspress include: (1) copyright infringement arising from unauthorized reproduction and public display of Adlife's copyrighted photographs in grocery store circulars produced on behalf of grocers, particularly Olean Wholesale Grocery Cooperative, Inc. ("Olean Wholesale Grocery"); (2) defamation arising from false statements to Adlife's clients that Adlife owed money to Buffalo Newspress and was unable to pay; and (3) fraud arising from false representations to Adlife that Buffalo Newspress was interested in buying the printing side of Adlife's business, which were made for the purpose of exploiting Adlife and unlawfully taking its business and customers. (*Id.* at ¶¶ 61-84)

## DISCUSSION

A court is permitted to transfer a case to any other district where venue is proper, "for the convenience of the parties and witnesses [and] in the interest of justice." *See* 18 U.S.C. § 1404(a). Motions to change venue involve a two-part inquiry requiring a court to consider: (1) whether the proposed district is one where the action might have been brought; and (2) whether the transfer promotes convenience and justice. *WD Encore Software, LLC v. The Software MacKiev Company*, No. 6:15-CV-6566, 2016 WL 1056628 (W.D.N.Y. Mar. 17, 2016) (internal citations and quotation marks omitted). "The burden [ ] lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors [defendant's] choice.'" *Columbus McKinnon Corp. v. SST Casting, Inc.*, No. 08–CV–167, 2009 WL 1563922, at *6 (W.D.N.Y. June 3, 2009) (*citing Capitol Records, LLC v. VideoEgg, Inc.*, No. 08–CV–5831, 2009 WL 614727, at *10 (S.D.N.Y. March 9, 2009); *see also Xiu Feng Li v. Hock*, 371 Fed. Appx. 171, 175 (2d Cir. 2010). The decision whether to transfer venue is at the discretion of the court. *See In re Manville Forest Prods.*, 896 F.2d 1384, 1391 (2d Cir. 1990).

Adlife argues that their request to transfer venue of this case to the District of Rhode Island satisfies both prongs of this inquiry. Specifically, Adlife contends that the lawsuit, including its counterclaims, could have been brought in the District of Rhode Island since Adlife's principal place of business is in Rhode Island. Adlife further submits that a venue change is warranted because: (1) the Western District of New York is inconvenient for Adlife; (2) all of Adlife's anticipated witnesses reside in Rhode Island; (3)

the relevant documents and sources of proof are in Rhode Island; and (4) trial efficiency warrants the transfer. Buffalo Newspress counters that the case is properly venued in the Western District of New York, that Adlife's copyright infrginement counterclaim could not be brought in the District of Rhode Island, and that convenience and the interest of justice does not favor a change in venue.

### *Whether This Action Might Have Been Brought in the District of Rhode Island*

For venue to be proper, the district court where the action is brought or transferred must have personal jurisdiction over defendant and subject matter jurisdiction over the claims. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). A copyright infringement case, governed by a special venue provision, may be brought in any jurisdiction where a defendant resides or may be found. 28 U.S.C. §1400(a). Courts have found that a defendant "may be found [for purposes of § 1400(a)] in any district in which he is subject to personal jurisdiction." *Boehm v. Zimprich*, No. 13-CV-1031, 2013 WL 6569788, at *2 (S.D.N.Y. Dec. 13, 2013).

The Rhode Island long-arm statute, R.I.G.L. § 9-5-33, permits jurisdiction to the fullest extent permitted by the federal constitution. *Almeida v. Radovsky*, 506 A.2d 1373, 1374 (R.I. 1986). Thus, a person or business who has sufficient "minimum contacts" with Rhode Island may be subject to the District Court of Rhode Island's personal jurisdiction. *Omni Video Games, Inc. v. Wing Co.*, 754 F. Supp. 261, 263 (D.R.I. 1991). However, "[t]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).

Here, the parties disagree as to whether Adlife's copyright infringement counterclaims against Buffalo Newspress could have been brought in Rhode Island, but neither party offers a detailed analysis as to whether the Rhode Island long-arm statute would apply to Buffalo Newspress, and specifically whether Buffalo Newspress has sufficient minimum contacts in Rhode Island to be sued there. However, because the Court finds, for the reasons discussed below, that the transfer to Rhode Island would not further convenience or the interest of justice, the Court need not decide this issue.

*Whether Transfer Would Promote Convenience and the Interest of Justice*

In determining whether a transfer of venue would promote convenience and the interest of justice, courts consider the following nine factors: (1) the convenience of the witnesses; (2) the location of the documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) plaintiff's choice of forum; and (9) trial efficiency. *Sepanski v. Janiking Inc.*, 822 F. Supp. 2d 309, 317 (W.D.N.Y. 2011). No single factor is determinative and other factors may be considered. *WD Encore Software, LLC*, 2016 WL 1056628, at *3; *citing Malone v. Commonwealth Edison*, 2 F. Supp. 2d 545, 547 (S.D.N.Y. 1998). The Court will address each factor in turn.

As to the first factor, the location of fact witnesses is considered a "major" factor when weighing whether to transfer a case. *E.C.C. Movers LLC v. FairPoint Comm., Inc.*, No. 18-CV-769, 2019 WL 1936322, at *3 (W.D.N.Y. May 1, 2019) (*citing WD Encore Software, LLC*, 2018 WL 1056628, at *3). In its motion to transfer, Adlife states that nine of its "key" witnesses are located in Rhode Island. Adlife represents that these individuals

will testify about the business relationship between Buffalo Newspress and Adlife, the nature of Adlife's printing business; alleged misrepresentations to Adlife and defamatory statements to Adlife's customers by Buffalo Newspress; late deliveries by and customer complaints about Buffalo Newspress; credits owed to Adlife by Buffalo Newspress; the unauthorized use of Adlife's copyrighted photographs; and Adlife's loss of revenue, clients and income. Buffalo Newspress counters that Adlife has inflated the number of witnesses located in Rhode Island. Specifically, Adlife's Rule 26(a) disclosures identified eight witnesses, including five of its own employees, two Buffalo Newspress employees, and importantly, Olean Wholesale Grocery, a non-party witness located in Olean, New York.[1] Indeed, Buffalo Newspress has also identified Olean Wholesale Grocery as a critical non-party witness. Significantly, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *Truk Intern. Fund, LP v. Wehlmann*, No. 08-CV-8462, 2009 WL 1456650, at *3 (S.D.N.Y. May 20, 2009) (citing cases). Thus, while each side has identified witnesses who are located in the District of Rhode Island and the Western District of New York respectively, the only mutually identified non-party witness, who is also named specifically in Adlife's counterclaims, is located here. For this reason, the convenience of the witnesses favors denying the transfer and retaining the case in this District.

As to the second factor, the location of documents and relative ease of access to sources of proof, Adlife argues that all of its documents, including the copyrighted material at issue, are located in Rhode Island. However, "the location of relevant documents is largely a neutral factor in today's world of faxing, scanning and emailing documents."

---

[1] Six of the individuals Adlife lists as "key witnesses" in its motion for a transfer of venue are not listed in Adlife's Rule 26 disclosures.

8

*Ward v. Stewart*, 133 F. Supp. 3d 455, 465 (N.D.N.Y. 2015). Here, Adlife's documents are largely located in Rhode Island. Buffalo Newspress documents, which are also relevant to the lawsuit, are likely located in this District. Further, Adlife does not claim that their documents cannot be exchanged through regular mail, electronic mail, or facsimile. Moreover, Buffalo Newspress represents that Adlife did not object to or otherwise indicate that it incurred hardship when electronically transmitting 1000 pages of documents during initial discovery. Since Adlife has put forth only a conclusory argument that proof would be more easily accessible in Rhode Island, this factor is neutral.

As to the third factor, convenience of the parties, "[w]here transfer would merely shift the inconvenience from one party to another, the plaintiff's forum should not be disturbed." *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997). Indeed, moving the case to Rhode Island would merely shift the inconvenience to Buffalo Newspress, whose principal place of business is in the Western District of New York. Since transferring this case to the District of Rhode Island would only serve to shift the burden from defendant to plaintiff, this factor favors retaining the matter here, the forum selected by plaintiff.

The fourth factor requires the Court to consider the locus of operative facts. To ascertain the locus of operative facts, courts look "to the site of the event from which the claim arises." *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06-CV-4328, 2007 U.S. Dist. LEXIS 62476 (S.D.N.Y. Aud. 8, 2007). With respect to plaintiff's breach of contract, accounts stated, and unjust enrichment claims, Buffalo Newspress performed the at-issue services in this District. Buffalo Newspress also printed Adlife's materials in this District.

Thus, the copyright violations alleged by Adlife also occurred here. Therefore, this factor weighs in favor of denying a change of venue.

As to the fifth factor, the Court considers the forum's ability to compel the trial testimony of unwilling witnesses. Buffalo Newspress contends that this factor weighs in favor of transfer, since a district court in Rhode Island would be unable to compel non-party witness Olean Wholesale Grocery to appear and provide testimony in Rhode Island. Indeed, Rule 45 of the Federal Rules of Civil Procedure permits a district court to compel a person located beyond its 100-mile radius to attend trial, provided that the court sits "within the state where the person resides, is employed, or regularly transacts business in person." See Fed. R. Civ. P. 45(c)(1)(b)(ii). As indicated above, Olean Wholesale Grocery is a New York corporation located in Olean, New York. In its prior disclosures, Adlife identified Olean Wholesale Grocery through an employee who also resides in Olean, New York. Since Olean Wholesale Grocery and its representative are located in another state more than 100 miles outside of the District of Rhode Island and do not appear to regularly transact business there, a District of Rhode Island court may not be able to compel testimony from this non-party witness. However, Buffalo Newspress has not specifically alleged that this witness, or any other witness for that matter, would be unwilling to testify should the matter be transferred to Rhode Island. For this reason, this factor is neutral. *See Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-CV-02486, 2018 U.S. Dist. LEXIS 219632 (E.D.N.Y. Dec. 22, 2018) ("As the parties have not alleged beyond speculation that their expected non-party witnesses would be unwilling to testify either in the Southern District of Florida or the Eastern District of New York, this factor is neutral."); *Seltzer v. Omni Hotels*, No. 09 Civ. 9115, 2010 U.S. Dist. LEXIS 103485

(S.D.N.Y. Sept. 30, 2010) ("In order for this factor to have any bearing, the parties must demonstrate that their proposed non-party witnesses would be unwilling to testify in the alternate forum.")

The sixth factor requires the Court to consider the relative means of the parties. Here, both parties are corporations. Thus, this factor is also neutral. *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004) ("Where a disparity exists between the parties, the relative means between the parties is a relevant factor in determining venue. When both parties are corporations, however, this factor is given little weight.").

As to the seventh factor, the forum's familiarity with the governing law, plaintiff's claims are governed by New York state law. "Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action." *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799, 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000) (internal quotations omitted). Further, both this District and the District of Rhode Island are familiar with federal copyright law. On balance, this factor weighs in favor of denial of the transfer.

As to the eighth factor, "[a] plaintiff's choice of forum is generally entitled to considerable weight—particularly when the plaintiff is a resident of the forum district— and should not be disturbed unless the balance of several factors is strongly in favor of defendant." *Columbus McKinnon Corp.*, 2009 WL 1563922, at *9 (*citing Fuji Photo Film Co., Ltd. V. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006)); *see also Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004). Here, plaintiff Buffalo Newspress is a resident of this District and its choice of forum is entitled to deference. Moreover, none of the

factors discussed previously weigh in favor of a transfer. Thus, on balance, this factor also weighs in favor of denying the transfer.

Finally, as to trial efficiency and the interest of justice, Adlife argues that the District of Rhode Island has a less congested docket than the Western District of New York. Specifically, Adlife cites to Federal Court Management Statistics which show that as of December 31, 2018, judges in the District of Rhode Island had a total of 305 cases per judgeship, while judges in this District had a total of 906 cases per judgeship. (Dkt. 17-2 at ¶¶ 18-19) Buffalo Newspress counters that while the Western District of New York has a more congested docket, it adjudicates more copyright cases than the District of Rhode Island. Specifically, the Western District of New York had 214 copyright cases pending in 2018, while the District of Rhode Island had only 23 cases. (Dkt. 19 at 7-8) On balance, the Court finds this factor to be neutral.

Of the nine factors considered, the Court finds that five factors weight in favor of denying the motion to transfer venue (factors 1, 3, 4, 7, 8) and four factors are neutral (factors 2, 5, 6, 9). The Court finds that none of the factors weigh in favor of transferring this case. Thus, a transfer of venue to the District of Rhode Island would not promote convenience of the parties or the witnesses nor would it further the interest of justice.

## **CONCLUSION**

For the foregoing reasons, defendant Adlife Marketing & Communications Co. Inc.'s motion to transfer venue (Dkt. No. 17) is denied.

**SO ORDERED.**

_____
HONORABLE MICHAEL J. ROEMER
UNITED STATES DISTRICT COURT

Dated: August 19, 2019